## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**ERY VAZQUEZ,**

              **Plaintiff,**

**v.**                                  **Case No: 6:20-cv-1019-PGB-EJK**

**EXECUTIVE MANAGEMENT**
**SERVICES, INC.,**

              **Defendant.**

### REPORT AND RECOMMENDATION

This cause comes before the Court on the parties' Joint Motion for Approval of FLSA Settlement Agreement (the "Motion"). (Doc. 42.) Upon consideration, I respectfully recommend that the Motion be granted in part.

### I.    BACKGROUND

On June 11, 2020, Plaintiff Ery Vazquez initiated this action against Defendant Executive Management Services, pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219. (Doc. 1.) Plaintiff alleges that he was employed by Defendant as a general/commercial cleaner from June 17, 2019 through January 15, 2020; that he routinely worked over 45 hours in a week; and he was not paid overtime for all hours worked in excess of 40 hours, as required by the FLSA. (*Id.* ¶¶ 11, 20, 23.) Plaintiff further alleges he was terminated in retaliation for demanding overtime compensation. (*Id.* ¶ 30.) Defendant denies liability for Plaintiff's claims. (Doc. 42-1 ¶

D.) However, Plaintiff and Defendant have negotiated a compromise and settlement of Plaintiff's claims and filed a motion for approval of their settlement agreement (the "Agreement"), pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (Doc. 42-1.) On July 8, 2020, the Court directed counsel to inform the Court "whether or not the parties have entered into any agreement . . . . that has not been disclosed to the Court." (Doc. 43.) The parties indicated that they have not. (Doc. 43.) Thus, the Motion is ripe for review.

## II.    STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise

would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for a compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order

> to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers both "internal" factors—whether the settlement is fair and reasonable to the employee—and "external" factors—whether the settlement frustrates the purpose of the FLSA. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[1]

## III.   DISCUSSION

### A. The Settlement Amount

According to the Agreement, Defendant has agreed to pay Plaintiff $8,000.00: $4,000.00 for Plaintiff's wage claims and $4,000.00 in liquidated damages. (Doc. 42-1 ¶ 1.) Plaintiff initially sought $1,306.20 in wage compensation plus an equal amount

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981, are binding on the Eleventh Circuit).

of liquidated damages, and $2,693.80 for his retaliation claim plus an equal amount of liquidated damages. (Doc. 42 at 3.) Because Plaintiff will not receive less than the amount which he claimed he was entitled to under the FLSA, he has not compromised his claim within the meaning of *Lynn's Food,* 679 F.2d at 1354–55; thus, there is no need for further review.

### B. Attorney's Fees

Plaintiff's attorneys will receive $4,500.00 for fees and costs. (Doc. 38-1 at 4.) Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The parties represent that this amount was negotiated separately from the amount received by Plaintiff, and the settlement is otherwise reasonable on its face; therefore, further review is not required. (Doc. 42 at 4); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (stating that if the parties "represent[] that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

### C. General Release

In return for payment, Plaintiff has agreed to the following release:

> In consideration of the agreements and promises made by EMS in this Agreement, Vazquez hereby RELEASES AND FOREVER DISCHARGES Executive Management Services, Inc., together with its affiliates, including without limitation EMS Florida, Inc., as well as their respective owners, officers, directors, agents, attorneys, employees, and insurers (the "Released Parties"), from any and all claims, demands, liabilities, actions, or causes of action, whether known or unknown, foreseen

or unforeseen, contingent or actual, liquidated or unliquidated, which Vazquez had, has, or may have, up to and including the Effective Date of the Agreement, on account of, arising out of, or related to: (a) overtime pay owed or allegedly owed to him under the Fair Labor Standards Act or any other statute or regulation; (b) his employment with EMS and/or EMS Florida and the termination of his employment; (c) any other claim related to wages, compensation, or benefits of employment; (d) all claims which were actually alleged or which could have been alleged in the Lawsuit under applicable federal, state, or local laws; and (e) all other matters occurring prior to the Effective Date. Vazquez is hereby releasing each and every claim, known or unknown, contingent or actual, which Vazquez has or may have against EMS, or against any of the Released Parties, as of the Effective Date of this Agreement, to the fullest extent permissible by law.

(the "Release") (Doc. 42-1 ¶ 2.)

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and, therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352.

Nevertheless, courts in this District have approved general releases where a plaintiff received adequate, additional consideration in exchange, even where Plaintiff comprised their FLSA claims. *See Wilburn*, 6:14-cv-1557-Orl-37TBS, Doc. 18 at *6 (approving FLSA settlement where plaintiff compromised their FLSA claim and received $250 in separate consideration for general release where it was negotiated separately from plaintiff's FLSA claim). *See also Burch v. TTC Performance Prods., Inc.*, 6:20-cv-537-Orl-40EJK, Doc. 19 at *6–7 (M.D. Fla. Feb. 8, 2021), *report and*

*recommendation adopted*, Doc. 20 (M.D. Fla. Mar. 9, 2021) (approving FLSA settlement where plaintiff received full value for their FLSA claim, plus $100 in separate consideration for general release where it was negotiated separately from plaintiff's FLSA claim); *Buntin v. Square Foot Management, Co. LLC*, No. 6:14–cv–1394–Orl–37GJK, 2015 WL 3407866, at *2–3 M.D. Fla. May 27, 2015) (approving FLSA settlement where the settlement represented a compromise and consideration in the form of a neutral reference was promised by defendant to plaintiff in exchange for a broad general release).

Here, the parties state that Plaintiff is receiving full compensation for the FLSA claim, and that Plaintiff is receiving $1000 as consideration for the release. *See Owens v. SSRMI, LLC*, No. 5:16-cv-15-Oc-PGB-PRL, 2017 WL 2190646, at *3 (M.D. Fla. Apr. 28, 2017), *report and recommendation adopted sub nom. Owens v. SSRM1, LLC*, 2017 WL 2172089 (M.D. Fla. May 17, 2017) (explaining in order for a court to make an informed determination as to whether a general release affects the fairness and reasonableness of a settlement, an explanation regarding any other claims that a plaintiff is knowingly releasing and identification of any additional consideration given in exchange must be discussed in order for the settlement agreement to be considered for approval).This leads me to conclude that the separate consideration is adequate. *Owens v. SSRMI, LLC*, No. 5:16-cv-15-Oc-PGB-PRL, 2017 WL 2190646, at *3 (M.D. Fla. Apr. 28, 2017), *report and recommendation adopted*, 2017 WL 2172089 (M.D. Fla. May 17, 2017) (noting "courts in this District have also approved FLSA settlements with accompanying broad releases even where the plaintiff did not receive full

compensation for his or her FLSA claim, as long as additional valuable compensation was paid to the plaintiff in exchange for the broad general release.") Therefore, I conclude that the Release does not "undermine the public policies embodied in the FLSA and other labor and employment laws." *Wilburn*, 6:14-cv-1557-Orl-37TBS, Doc. 18 at *6 n.1 (citing *Dees*, 706 F. Supp. 2d at 1242).

### D. Non-Disparagement Provision

The Agreement contains a non-disparagement clause. (Doc. 42-1 ¶ 8.) It provides, in pertinent part:

> Vazquez shall not disparage or demean, either formally or informally, or assist in communicating any information damaging or potentially damaging to the business or reputation of EMS or any of the Released Parties, to any third party, including, but not limited to the media, the business community, the general public, employees, agents, or customers of EMS or any of the Released Parties, and any state, local, or federal government agency.

("Non-Disparagement Provision") (*Id.*)

Courts in this District have generally rejected non-disparagement provisions in FLSA settlement agreements, finding them to "thwart Congress's intent to ensure widespread compliance with the FLSA." *See Ramnaraine v. Super Transp. of Fla., LLC*, No. 6:15–cv–710–Orl–22GJK, 2016 WL 1376358, at *3 (M.D. Fla. Mar. 28, 2016) (internal quotation marks omitted), *report and recommendation adopted*, 2016 WL 1305353 (M.D. Fla. Apr. 4, 2016); *see also Holley v. Sebek Kirkman LLC*, Case No. 6:15-cv-1626-ORl-40GJK, 2016 WL 3247589, at *5 (M.D. Fla. May 26, 2016), *report & recommendation adopted*, 2016 WL 3231232 (M.D. Fla June 13, 2016). "However,

Courts have upheld non-disparagement clauses that benefit employers where there has been a reciprocal agreement to provide a neutral reference, which inures to the benefit of the plaintiff." *Bell v. James C. Hall, Inc.*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report & recommendation adopted*, 2016 WL 5146318 (M.D. Fla. Sept. 21, 2016); *see also Clarke v. Alta Resources Corp.*, Case No. 2:17-cv-276-FtM-99CM, 2017 WL 4958771, at *3–4 (M.D. Fla. Oct. 30, 2017), *report & recommendation adopted*, 2016 WL 4958770 (M.D. Fla. Nov. 1, 2017) (approving of a non-disparagement provision where, in exchange, plaintiff received additional consideration, a neutral employment reference, and a mutual release of claims).

Here, Plaintiff is not receiving separate consideration or a neutral employment reference, nor is he receiving a mutual release of claims in exchange for the non-disparagement provision. (*See* Doc. 42-1 ¶ 8.) Thus, the non-disparagement provision is not mutually beneficial to both parties. As such, I cannot recommend approval of the Agreement with the Non-Disparagement Provision.

However, this Agreement contains a severability provision that provides:

> Each provision and individual covenant of this Agreement is severable. If any court or other governmental body of competent jurisdiction shall conclude that any provision or individual covenant of this Agreement is invalid or unenforceable, such provision or individual covenant shall be deemed ineffective to the extent of such unenforceability without invalidating the remaining provisions and covenants hereunder.

(the "Severability Provision") (Doc. 42-1 ¶ 14.) Courts in this District routinely approve settlement agreements while striking unfair or unenforceable provisions of the agreement when the agreement contains a severability provision. *See, e.g., Encarnacion*

*v. Dannix Painting LLC*, No. 6:18-cv-682-Orl-41KRS, 2018 WL 5084749, at *3 (M.D. Fla. Aug. 13, 2018)*, report and recommendation adopted*, 2018 WL 5840509 (M.D. Fla. Nov. 8, 2018) (recommending that the contradictory provisions and the general release provision be stricken where the settlement agreement contained a severability provision); *Goern v. Everglades Day Safari, Inc.*, No. 2:16-cv-755-FtM-99MRM, 2017 WL 3328242, at *3 (M.D. Fla. July 14, 2017)*, report and recommendation adopted*, No. 2:16-cv-755-FtM-99MRM, 2017 WL 3316369 (M.D. Fla. Aug. 2, 2017) (recommending that the plaintiff's "waiver and general release" provision be stricken where the settlement agreement contained a severability provision); *Ramnaraine v. Super Transp. of Fla., LLC*, No. 6:15-cv-710-Orl-22GJK, 2016 WL 1376358, at *4 (M.D. Fla. Mar. 28, 2016)*, report and recommendation adopted*, No. 6:15-cv-710-Orl-22GJK, 2016 WL 1305353 (M.D. Fla. Apr. 4, 2016) (recommending that the non-disparagement and confidentiality provisions be stricken from a settlement agreement that contained a severability provision). Because the Severability Provision permits striking the Non-Disparagement Provision, I recommend that the Court sever the Non-Disparagement Provision (Doc 42-1 ¶ 8) from the Agreement.

## IV.   RECOMMENDATION

Upon consideration of the foregoing, I respectfully recommend that the Court:

1. **GRANT IN PART** the parties' Joint Motion for Approval of FLSA Settlement Agreement (Doc. 42);

2. **SEVER** the Non-Disparagement Provision (Doc. 42-1 ¶ 8);

3. **FIND** that the parties' Agreement (Doc. 42-1), as revised, is a fair and reasonable resolution of a *bona fide* dispute under the FLSA;

4. **DISMISS** the case with prejudice; and

5. **DIRECT** the Clerk of Court to close the file.

<u>**NOTICE TO PARTIES**</u>

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on November 8, 2021.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record